Thank you, Your Honor. May it please the court, my name is Joe Zasitarsky. I'm with the law firm McGammon Howard and Zasitarsky here in Raleigh and I represent the appellant, Zackary Lull, in this case. This case involves a Franks challenge to a search warrant. On May the 8th of 2014, a detective with the Sheriff's Department over in Wake County presented a search warrant application to a state court magistrate judge which was based on the claims and the actions of a confidential informant. The application basically, in general, alleged four things. That this informant claimed to have previously bought drugs from my client, Zackary Lull, at his house at an address up in Rollsville, which is in northern Wake County. Secondly, that a record check showed that that home was owned by a woman named Lull. Third, that within the previous 72 hours, the detective had arranged for that informant to go into the house and take a controlled buy of an amount of cocaine. The agents listened via investigative means and heard two males talking during the deal. The informant came out with four grams of cocaine and said that he had bought it from Mr. Lull. And finally, the detective put in the affidavit that it was, in his experience, it's regular for drug dealers to keep drugs and records of their deals in their homes. So why isn't all that enough to support probable cause in this case? It's a, probable cause is not a very demanding standard. Because of what he left out of the affidavit, Ron. What the detective left out of the affidavit is that when the informant came out of the home, the officer saw him jiggling with his person and thought that suspicious. And he was short some of the buy money. He'd been given more buy money than he used during the deal. He claimed he had given all the money to the seller of the drugs. They searched him. They found he had hidden money in his underwear. They immediately arrested him, charged him with a felony offense of obtaining property by false pretenses under state law. They didn't find the money in his underwear right away though, did they? At first he denied. He said I gave all the money to the seller of the drugs. And they stepped outside the interview room according to the testimony in the suppression hearing, discussed it, went back in and strip searched him. And that's when they found the money. They charged him with the felony. They arrested him. And they immediately discharged him from any future informant work for, according to the document in the record, providing false information. All of that occurred before the detective went to get the search warrant for Mr. Lowell's residence. But all that said, I have to say, and I'd love to hear your response, I suspect that most federal judges would not even have given you an evidentiary hearing under Frank's on this record. So you obviously persuaded Judge Boyle that there was something going on here that really needs to be examined. Because as Judge Stacker just indicated, even putting all of that in, putting all of that in, we have a, by the way, Judge, we have a felony charge for attempted theft and so on against our informant. You still have probable cause. And so under Frank's, to get a hearing, you actually have to show that if you prevailed at the hearing and either took out what was false or put in what was left out, then probable cause is vitiated. Well, there's one other fact, I think, Your Honor, that you have to add to the mix. What's that? Which is when they go and execute the search warrant just hours after they get it, there's four other males there with Mr. Lowell. The only evidence in the record, the only evidence in the application, the only evidence in the record today that those drugs were purchased from Mr. Lowell and not one of those other four gentlemen is the informant. So the credibility of that informant is vital. But this was a search warrant, not an arrest warrant for Lowell. Correct. So who cares how many guys were on the premises? Well, because I think that goes to the materiality question. Wasn't there a phone call setting up the buy in which somebody named Zach, your client's first name, spoke? That's the testimony at the suppression hearing, Your Honor. That is not in the warrant application. The warrant application says we overheard a two males. They then go execute the search warrant, and there's five males there, including Mr. Lowell. And Your Honor's point is the one I think that the district court adopted, which basically, the district court basically said there's no violation on the materiality on the second prong. There's no violation because if they got drugs from the house, there's probable cause to go search the house. In essence, a per se rule. And as we argued in our brief, we cited the First Circuit. That court, the First Circuit directly rejected that reasoning, said simply because you make a sale from a home that does not in and of itself give you probable cause to search that home. And that goes back to the cases of this court. And when we look what gives probable cause, it's not probable cause to search a person. It's probable cause to search the place for evidence of the crime. And here, as the detective said in his affidavit, drug dealers keep records and drugs in their homes. If this sale came from one of the other gentlemen present, not Mr Lowell, then there would not be probable cause to search that home. In fact, the only evidence in the record that that is Mr Lowell's home is the claim of the informant. That's the only evidence. Mr Zizek Tatarski, I think we would all agree, would we not, that confidential informants don't tend to be fine upstanding citizens. Correct. And do you think that it would, do you think the fact, so what about this particular act being committed, well I guess there's this sheer brazenness and stupidity of doing it in full view of the police, but taking that out of it, how does that, how do I prove materiality? Yes ma'am. And your honor, the argument I would make to you is the actions of the sheriff's department prove materiality. How so? What do they do when they learn about what this informant did? They not only arrest him, they immediately fire him. And they disqualify him from being an informant. And the testimony at the suppression hearing from the detective was that he did that at page 99 because he is not reliable and at page 100 because it would not be an ethical thing to do to rely on someone like that after they stole from the police. But yet that is exactly what they did in this case. And that's what the search warrant says, this I have a confidential informant who's reliable. They didn't even go that far your honor. The word reliable is not in that. This is a first time informant for the purposes of that affidavit. And that's another key point, is that when, that makes the credibility of the informant all the more important because this, according to the four corners of the affidavit, is a first time informant. Which makes the credibility all the more important, not only practically to the state court magistrate. I've never seen a search warrant where you, the officer doesn't explain up front what makes the informant reliable. And I would argue here that officer could not do that because that officer did not believe the informant was reliable. Precisely your honor. He didn't say the informant was reliable because he knew the informant was not. And in fact his department had already made the determination that the informant was not reliable. And that's why that information is so important to the reviewing magistrate in We know under the case law that's cited in our brief that that's kind of a different category. And I cited cases from other circuits where they were tip cases. But what was involved was a first time informant and something's left out about the credibility of the informant. And the courts there found Frank's violations or found a Frank's hearing to be required. Here I would submit it's even more grave because here the credibility issue goes to the very transaction at issue in the affidavit. It's not that the informant lied to the police in the past or it's not that the informant's been convicted of forgery five years ago. It's that in this transaction he lied to us, he stole from us, we fired him and we charged him with a felony. And they chose not to tell the magistrate any of that. And I would submit the reason they didn't is because they knew that the search warrant would not be granted. And I'd submit that the record shows that they knew because they themselves had already made that determination. They were not going to use him anymore. The only reason they wouldn't use him anymore is because... For sure it shows that they did not think he was reliable. They say that. Absolutely. They said that in the hearing, your honor. But what about the surrounding circuit, the phone calls, the observations of the officer, the search that they made of the informant beforehand, no contraband, then he comes out with contraband? Again, your honor, I think that goes to, the record establishes that he goes into this house without any drugs, he comes out with drugs. The issue becomes the only evidence that those drugs... I don't know if the record actually establishes that he went in without any drugs because they searched him when he came out the first time for contraband and somehow didn't find that $20 until they got to the police station. So, it's possible that he had the tiny baggies of drugs concealed. They clearly didn't do an appropriate search when he came out. When he came out, precisely. So, how do we know they did an appropriate one when he went in on a guy who is, we now know, not reliable? On this record, absolutely, your honor. And we also know that the only evidence that it was Mr. Lull that sold him those drugs other than one of the other four individuals, all of whom were arrested, by the way, when the search warrant went down, all of whom, the record shows, were charged in the state court with possessing the drugs that were found. We don't have any way of knowing other than the claim of this informant. That's why the credibility of that informant is so key to this affidavit for the search warrant. That's why the failure to tell the magistrate about that, we would submit, is so material. Again, it's an issue of would that defeat a finding of probable cause? That's the second pronged standard. And I'd submit to you, as I just argued, that the actions of the sheriff's department show that they certainly believed it would because they weren't going to use him any further. We'd submit to the court that the district court's reliance on this sort of per se approach is inappropriate under the cases we've cited and under the rulings of this court. I'd like to speak a moment about the first prong as well, which is that the omission has to be intended to mislead the magistrate or in reckless disregard of its misleading effect. The district courts found that the detective, as he testified, intentionally did not tell the magistrate this, but found that his explanation that he basically didn't intend to mislead the magistrate was wrong. I'd say to the court that where the detective testifies that his excuse for not disclosing this to the magistrate was, I considered these to be two separate things. He didn't think that the dishonesty tainted the buy. Correct. And the argument that I would make, obviously, is that the dishonesty was part of the buy. He stole the buy money, he lied about the buy money, and he then was charged as a result with a felony as a result of his actions during the buy. Was there anything else tying lull to the buy other than hoots? No, no, no, your honor. It occurs at a home owned by a female named lull. That's the only other fact in the record, which I think the government would argue would tie it. I would argue, of course, that there's no evidence in the record other than hoots. If you don't believe the confidential informant, all you have is that he bought cocaine from somebody in lull's house. Correct. Which is insufficient for probable cause for the search of the house under the cases that I've cited in our brief. The other circuit cases. Yes, sir. There's no authority in this circuit for the proposition that merely because a drug sale takes place in a residence, that's not enough for probable cause in the absence of any countervailing evidence to believe that there isn't evidence of drug dealing in that house. Well, your honor, I would I would respectfully disagree. What case? What case? I would argue that there's no case that explicitly states that your honor's correct. However, the Williams case that I cite in my brief talks about how search warrants are authorized for a search of the house were controlled by occurs where the seller is a resident or frequent habitant of that house. And again, that last part is the key because again, the Doyle case talks about how a search is reasonable under the Fourth Amendment, not because the owner of the property is suspected of the crime, but because there's reason to believe that evidence of the crime will be found on the property. In other words, at the place of the search here, the only thing that would tie this place to continue drug activity after that controlled by would be if a resident of the house perhaps only by inference is Zach Lowe. And Zach Lowe's mother is the owner of this property. And he's 18 years old. But we're not talking about some 35 year old with the with the condo downtown. But the 18 year old, your honor, and the Zach Lowe is not part of the search warrant affidavit. There's nothing in the search warrant, David, about Zach Lowe's age or where he lives. Yes, there is. Other than the informant's claim, there's not an 18 year old white male, other than the informant's claim, your honor. I understand that. I understand that. And again, and then the informant goes in and actually buys drugs, leaving apart the question of the sufficiency of the search that the pre buy search goes in, buys drugs, comes back and says, yeah, I got these from Zach. Again, relying on the informant that he got those from Zach rather than the other people who are present. But does that matter? I mean, everybody present was arrested, were they not? Yes, they were. Because this was, after all, and it was a search warrant. It was a search warrant for that residence, for that residence. And again, didn't you didn't have probable cause for a search of that residence based on the knowledge that there were drugs coming out of the residence that they didn't think went in? Well, I think that's the key point that I'm arguing to the court, your honor, is I would argue to the court that under the case law, simply making a controlled buy from a residence in and of itself is insufficient by itself to authorize a search from that residence without evidence, reliable evidence, evidence to establish probable cause that that purchase is from a resident or someone who habitually is there. What was the time lapse between the buy and the execution of the warrant, or the swearing of the warrant? The buy is 6.05, the warrant is issued at nine o'clock, the execution is 10.35. Five hours later? Correct. And I guess we don't know from the record, but was the premises under surveillance that whole time? We don't know from the record. Okay, so we don't know. But five hours? Mm-hmm. Isn't it reasonable to think that if there were drugs there at two o'clock, there's probably going to be drugs or evidence of drug dealing there at seven later that afternoon? Only if you have reliable evidence that the drug dealer is still there, either because he's a resident or because you've kept surveillance up of the person who conducted the sale. An 18-year-old drug dealer. Again, Your Honor. In his mom's home. To find all of that, you have to go back to the reliability of the confidential informant. Thank you. You have some time reserved for rebuttal. Thank you, Your Honor. Mr., is it Weedy or Weed? Weed. Weed. Yes. Mr. Weed. Thank you, Your Honor. What a name for a prosecutor. Yes, for drug cases. My name is Patrick Weed and I represent the United States. In this case, we have an experienced investigator who made a calculation about what information was necessary to establish probable cause. How do we know that? It just seems to me that one in every search warrant, in every affidavit with which I am familiar, there is just some language about and I have reason to believe that this confidential informant is reliable because I have dealt with this confidential informant in the past. Yes, and Your Honor, I believe Investigator Welch addressed that at the suppression hearing when asked and said that he could have put that information that the informant was reliable and that he was reliable with the regard to the information that he had provided, notwithstanding the actions. Then why didn't he? If he's an experienced investigator and every search warrant application does give some indication of reliability, he didn't put it in there because as he testified, he was not reliable. I believe, respectfully, that his testimony was he felt that he was reliable with regard to the information that he provided. He said he could have put it in there. Why not put that in there? He just said he did not. I don't think he elaborated any further than that. It's a reasonable inference then, isn't it, that especially since he said later he wasn't reliable and they arrested him on the spot, that he left it out because he knew it would hurt the search warrant affidavit, make it less likely to issue. Don't you think that's something that the magistrate judge would have wanted to know? I respectfully would disagree with that. I think... So if the officer had called you at the point in time this happened and they had to arrest him and you were writing the search warrant affidavit for him, you would not have put that in there? I would have advised him to put that in there, yes. Okay, and why? Because I think it is important to provide as much information as possible, but this court has noted before that law enforcement officers are not attorneys and that oftentimes search warrants are written in haste and I think that is evident of what happened in this case. It's something he certainly could have put in there. Especially for, as you say, an experienced investigator. Correct, but Investigator Welch testified at the suppression hearing that he believed that with regard to the information that the informant had provided, that the informant was reliable and all the information that the informant had provided up to the point in which the post-transaction theft had occurred had been checked out. The informant told Investigator Welch, an individual, Zachary Lull, that he was familiar with and we learned from the suppression hearing. Was the phone call recorded when he made the, when the, didn't the CI make a phone call to somebody named Zach to set up the buy? That is correct, Your Honor. Was that recorded? I believe it was, yes, and that occurred before the controlled purchase took place. I don't see it in the record anywhere, at least not in this. Right, I believe it was recorded, that's how he... And did he wear, did the CI wear a wire when he went into the house? He had the phone, Investigator Welch had given him a phone. But no way to record the conversations in the house, I think is the thrust of the question. I'm sorry, I believe it did have a recording device because Investigator Welch testified that he was able to hear during the time they were not watching what was taking place. Is there a documented recording then of what happened in the house? I believe so because Investigator Welch testified suppression hearing that they were able to, actually in the search warrant affidavit, that they were able to hear one other male voice inside the home. So there was surveillance during the control purchase, there was surveillance of taking the informant to the house. The informant was in the house for only a five minute period of time. The informant comes back out of the house, is searched again once he comes back out of the house, and during that time he was in the house. What did they find when they searched the house? He had something though, didn't he? He had the $20 bill. How do we know he didn't have something when he went in the house? Since he's not reliable. I believe that he was searched before he went in the house as noted. Well their search techniques, experienced investigator also couldn't find the $20 bill when he searched him when he came out. I would respectfully submit that I think it's a little bit different searching, patting someone down and trying to find a piece of paper which is one $20 bill versus cocaine was what the informant had and that has a different contour and different feel and I would contend it would be much easier to find and locate than a $20 bill that's in someone's underwear. It was curious to me that the district court found that the officer intentionally left the evidence, the information out of the warrant. That's interesting because the district court apparently believes that the officer thought about it and consciously decided to exclude it and I don't quite, I can't come up with any explanation for that. I can understand sort of okay, I think they're two different things. I don't see a connection but I can't understand going through a process knowing that and recognizing that it's relevant and not included. I believe what the district was talking about there relates to what this court has said in the Coakley case and that is that every decision that investigator makes of what to include or not to include in a search warrant affidavit is an intentional decision and that it is a knowing decision, requires some thought. That does not mean the Coakley case, this court drew the in the sense of acting in bad faith or acting recklessly and leaving that information out. In other words, it was just, it was conscious, it just wasn't an editorial slip is what the district court is saying. Not that he made a conscious choice with respect to the evidence being, with respect to the materiality of the evidence. I believe that is correct. It wasn't omitted by mistake. That is correct and I think what he and what investigator Welch testified to was he did not believe that it was relevant to the issue of probable cause because it occurred after the transaction was completed and investigator Welch said that confidential formants are treacherous and I think this court asked a question in the other side's argument about that as well and formants often. They don't tend to be people you want to have dinner with. That is correct, they're not pillars of the community. He needs retraining and I'm sure you're not here to defend this officer. As I said, it is not a good practice. You're not here to defend this officer. This officer knew better. Correct. He knew he should have included this information. He took a risk not to include it but clearly he knew he should have included it in this affidavit. You can't say that a person is reliable up until 645 and then at 645 based on trying to steal some money from his agent, now he's no longer reliable but everything he did before 645 is perfectly reliable. This officer surely had enough experience to know that that's not the kind of thinking that one employs in preparing a search warrant application. I certainly understand the respect that I do take investigator Welch at his word and when he gave sworn testimony then his mind, right or wrong, in his mind at that point he did not believe that to be a fact that the magistrate needed. That's why he needs retraining. That's exactly my point. He needs retraining to understand the meaning of reliability and showing reliability in a search warrant application. It's not for him to decide what's important to the magistrate or judge to whom a search warrant application is being presented. It's for the magistrate judge to decide what's important based on all of the relevant information and that was relevant. The question was relevant. And I would add to that though simply that the and I guess we take respect we take exception to that he knew that he should have added it in and didn't. I would take him at his word in his sworn testimony and the suppression hearing. He knew it was relevant. I'll grant you you are protecting him contrary to what I said and I understand why you you feel you need to do that but he knew it was relevant. Whether he knew subjectively that he ought to include it I'll grant you that but he was relevant to the determination of the informant's reliability. I can't say just exactly what he knew but I would agree yes it is relevant information yes. Well I mean you can't stand up and the first thing you said was this was an experienced investigator and then disagree that he didn't know this was relevant. He's either inexperienced and clueless or experienced and intentionally left this out because he knew it was important. Yeah I think again he gave in his sworn testimony his rationale his mindset that he knew that. When was it that the prosecutor knew this this prosecutor's office knew that this CI had been arrested and had tried to steal money and was not reliable? I could not say exactly when that was known. I don't know what point the discovery was I was not the prosecutor at that point. There is no I went back just to check the affidavit and there is no representation. It appears from the facts alleged to establish probable cause just that well he says I make this affidavit based on my training and personal knowledge together with credible. So other persons but not the informant? Not the informant. It's interesting. Right. You know this officer is either extremely experienced and extremely savvy or not at all. I mean because that's very carefully worded to suggest that there's credible information back there without mentioning the informant. And I'm speculating I'm guessing perhaps here he's referring to other law enforcement officers. Which is my point that there's no there's nothing in here that suggests to the informant. Well I would respectfully I would argue that that is inferred from all the description the next the rest of it. Because the only other thing in there goes to within the past 72 hours information was received about this young white male residing at this address and that there was a recent purchase from that male. There was nothing to suggest that and the defense said it was a first time. There's nothing to vet yet anything this confidential informant has said or done. Respectfully I would disagree and say investigator Welch did vet the information because starting even before that in the affidavit investigator Welch wrote that the informant said he had recently bought drugs from the male identified as Zach Lull. That in and of itself gives some credibility I think to the informant because it indicates that the informant is acknowledging that he the informant has committed a felony. He has been in possession of. If you believe him. I'm sorry? If you believe him. Correct. And he's not reliable. Why should you believe him? Well he was reliable with regard to the information he provided. He's reliable with regard to what the government wants him to be reliable for on and not reliable otherwise. I would submit that even with regard to the second prong of franks even if the inclusion all the omitted information had been put into the search the magister would have reached the exact same conclusion and found probable cause in this good faith come up at all in this case. Good faith is not applying to Frank's violation. So there's a frank violation. There is no good faith exception to exclusionary rule. Well really? Yeah. A Frank's violation by which you mean both intentional or reckless disregard for truth and materiality on probable cause. Correct. Okay. Yes. And so I think that with regard to information that was corroborated independently corroborated by investigator Welch. First of all the informant says that he had purchased drugs recently from Zachary Law. He provides the address. Investigator Welch goes to that location confirms that there is an address. Secondly he checks the records and confirms that there is an individual who owns a house by the last name of Law. So two pieces of information before they even did the control purchase were independently corroborated. Then a control purchase takes place. Control purchase is I think the magistrate would have known from that description. Mr. Weed I'm a confidential informant. I go to the police and say I bought drugs from Jacqueline Smith across the street. The police run a check and find out that Jacqueline Smith does indeed live across the street. How has that advanced any inquiry of significance? That's just the first thing that he's done. It advances by saying that initial fact has some level of truth to it. He wasn't lying about that particular fact before you go on the next stage. Which is to go to the house and find out that indeed Jacqueline Smith lives there. That is correct. That's it. What does that tell you about the print? That seems like a pretty thin read to me. Because I could under that scenario I could accuse, I would be able to create probable cause with respect to any allegation I made with respect to anybody I know by name with an identifiable address and confirmable address. Right and then the next step is the most important which was the control purchase itself. And when he comes out like $20. But the control purchase I would contend the transaction itself had ended. The informant was searched. He was taken to the house. He was surveilled the entire time until he enters into the house. There's a phone recording once he is inside the house. When he is inside the house. We don't have any indication at least I haven't seen in the record of what was said inside the house that the officer heard on the phone recording. I sort of would think that would have been in the affidavit too. Particularly if you referenced him by name, Zach. He didn't. And what the informant said that Zachary Lulz had sold him on the recording. Right. There's nothing about what was overheard that went on in the house. The officer was listening right? Correct. Right. So it's just curious to me that there's also nothing about that. Presumably what he overheard might have been helpful to establish probable cause as well. And certainly government would have preferred that he put in the affidavit that recorded a phone call before the confidential control purchase where the defendant identified himself as Zach. Even in this record somewhere I would have liked to have seen it, heard it. Right. If it existed. Right. But I think the fact that the investigator left out information that was favorable to the government also going back for a moment to the first problem helps establish that he did not have bad intent. That he was not intentionally or recklessly trying to omit information in order to mislead the magistrate. If he were trying to do that then he would have put in all the good information including the fact that the defendant identified himself as Zach in the recorded phone call or the phone call that occurred before the control purchase had taken place and just simply left out the fact of the post-transaction theft. But that's not what happened. He had he left out some good information that would have been helpful with regard to the probable cause question as well. So I think that's an issue to consider with regard to the first problem. But I think most importantly with regard to the second problem I would submit that even if all of the information that was omitted is included in the search warrant affidavit there is still sufficient probable cause, still sufficient evidence to conclude that there is a fair probability that there is evidence of a crime located in that house to be searched or contraband located in that house to be searched. And therefore that is one of the strongest reasons in favor of affirming the district court. Any other questions for the court? Just to be perfectly frank about it, if we reverse here this agent's in a big trouble, in big trouble professionally isn't he? I don't know if I could speak to that. I understand I think the agent has moved on and I think it was brought back for this hearing in San Francisco. I don't know I could speak to what professional impact that would have. I think it'd be very significant. Yeah. Thank you. And because the defendant cannot meet either of the Franks wrongs so respectfully the government asked this court to affirm the judgment of the Mr. Zizek-Giparski. Did I get all the consonants? I miss many myself sometimes. I'd like to if I could just spend a minute responding to the prosecutor's last argument which was in essence that this search warrant still would have been issued by the state court magistrate had all of this been included in the affidavit. And of course the test is whether a reasonable magistrate right not whether this particular judge would have issued it. I would argue to the court that with respect to that the government has not cited any case to the court where probable cause was upheld for a first-time informant where the affidavit said the informant we've concluded the informant's not reliable. We've concluded it would not be ethical to use the informant because he stole from the police and the informant had just been arrested for a felony for his involvement in the very control by that's the subject of the warrant. So well have you found any case where there was a control by using a confidential informant and of course there's no way for you to know whether a warrant request is denied but are you aware of any case where a warrant was found to lack probable cause because of the absence of information about a confidential informant? Not under Frank's your honor. Under what? There are cases that I've cited in my brief that don't have control by. That's what I'm asking about control by. I'd be interested to know if the issuing judge or on appeal or suppression hearing judge said this is bad this this doesn't fly because a control by is sort of sui generis right? I was unable to find one your honor and I think there's two explanations for that. One of them is if that occurs in a district court it's not likely to be appealed. Secondly under the circumstances that would have occurred in this case if a if a search warrant was not issued that's the end of the road and I don't think the government would ever appeal a case where this kind of activity was actually laid out in a search warrant. There was a denial of the search warrant or there was it was granted and there was some kind of issue where the district court then suppressed the search where there's this kind of information in Can you model for us the conversation between the hypothetical reasonable judge and agent welch in this case if he had included by the way judge this knucklehead tried to steal from us when he came out we'd given him extra money he only brought us four bags he was acting strange we took him back to the precinct we went through our normal processes we stepped out of the room and conferred with each other and decided he's hiding something so we strip searched him and sure enough we found a nut an extra bag and and and and so on how would that conversation have gone well I think your honor the conversation other than the judge saying what a knucklehead well I think the judge would have asked the detective well how how do you know the informant bought the drugs from the person who you're saying he bought it from what are you relying on other than the informant's work because he told us about it yesterday we recorded the phone call we did the check on the residence etc and and we and he had the phone and I think that the phone's not in the affidavit but surely the officer would have told the judge about the phone which we can't rely on at this point well but you're you're modeling the conversation well I think he would say I think he would say to the detective uh you're telling me this guy is not reliable what else do you have what else do you have to assure me that there's probable cause that there's going to be evidence of a drug crime in this house the four bags judge what but that came the four bags but that came from the informant saying that it came from the resident how do we know that it didn't come from somebody else who's not there anymore because it would have been harder to hide four bags than a twenty dollar bill well again but that doesn't answer the question about who those four bags came from well everybody was arrested everybody was arrested based on what was found in the room in their presence only one person was prosecuted in federal court your honor which is my client you're hypothesizing that the informant goes in with four bags or five bags I'm hypothesizing that he goes in there and he buys the four bags from one of the non-residents of the home who are present so you're conceding that there was a drug transaction in the house your honor I I think there's evidence in the record that he could have gone in with the four bags but how plausible is that I don't think it's very plausible I agree with you on that I mean he didn't go in there with five bags of dope but he came in there and came out with five bags precisely but again it goes to the point of the the first circuit in the name I can't say case directly rejected the idea that that in and of itself is enough for a search warrant of a house unless you can also go the next step and have probable cause to believe that a resident or a frequent habitant of the house was the seller the only evidence here that it was a resident what was the time what was the time period in in your first circuit case the time between the control buy-in in that case your honor they actually wound up upholding the search warrant based on other factors outside of the per se rule they found there that the corroboration needed was there okay and do you remember what the time I do not I do not I do not I know here it's roughly four and a half hours four and a half hours right um the one other point uh I'd like to address um with respect with respect to the first crime um this court this court in miller said in essence the standard for reckless disregard is is it information that the detective knew would defeat probable cause that establishes recklessness the government made an argument that we should accept the detective at his word I would argue that the record shows the detective's actions show and the detective's department's actions show that they knew that this that this evidence would defeat probable cause and for that reason we'd ask the court to reverse the district court's order and to suppress this evidence thank you very much thank you
judges: Allyson K. Duncan, Stephanie D. Thacker, Andre M. Davis